**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | )<br>)<br>) | Case No. 13 CV 06879 (KMW) |
| Plaintiff, | )<br>) | |
| -against- | )<br>) | |
| JOHN AARON BROOKS, | )<br>) | |
| Defendant. | )<br>) | |

---

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT, OR, ALTERNATIVELY, TO TRANSFER VENUE

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND FACTS ............................................................................. 2

ARGUMENT ....................................................................................................... 8

I.    The Case Should Be Dimissed Because This Is Not The Proper Forum For The CFTC To Assert and Pursue Its Claim Against Brooks. ........................................ 8

A.    This is not "the proper district court of the United States" within the meaning of 7 U.S.C. §13a-1(a).  Consequently, the Commission is acting beyond its authority to bring an action against Brooks in this District, and venue is improper..................................................................................... 8

B.    The Court should ignore the CFTC's allegations concerning any alleged fraud on the "large commercial bank having its principal place of business in New York, New York" because those allegations are not stated with particularity as required by Rule 9(b), Fed. R. Civ. P. and, under the circumstances, do not state a plausible claim. ......................................... 10

C.    Under the rule laid down in *CFTC v. Amaranth Advisors, L.L.C.*, this case should be dismissed for lack of personal jurisdiction over Brooks. ......... 12

D.    Should The Court Be Concerned That The CFTC Can Properly State A Claim Against Brooks That It Is Authorized To Pursue In This Venue, It Should Require The CFTC To File A More Definite Statement, Alleging With The Requisite Particularity The Facts Supporting Its Allegations That Brooks Somehow Defrauded The Bank Affiliated With Brooks' Employer Or That Personal Jurisdiction Exists and Venue Is For Some Other Reason Proper In This District........................................................ 15

II.    Alternatively, The Court Should Transfer Venue to the Southern District of Texas (Houston Division) As A Matter Of Convenience ............................................... 15

A.    This action could have been brought in the United States District Court for the Southern District of Texas (Houston Division). ................................. 17

B.    Considering the convenience of the parties and witnesses, and the interests of justice, a transfer to the United States District Court for the Southern District of Texas (Houston) is appropriate................................................ 17

CONCLUSION.................................................................................................... 19

Pursuant to Rule 12, Fed. R. Civ. P., Defendant, John Aaron Brooks ("Brooks") moves to dismiss the Complaint or, alternatively for a more definite statement. In the alternative, Brooks moves to transfer this case to the U.S. District Court for the Southern District of Texas pursuant 28 U.S.C. §1404.

The specific grounds for Brooks' motion are as follows:

1. The Plaintiff lacks authority to bring this action in this Court (and thus the Complaint fails to state a claim upon which relief can be granted) because this is not "the proper district court of the United States" in which plaintiff, the U.S. Commodity Futures Trading Commission (the "CFTC" or "Commission") is authorized to bring this action pursuant to 7 U.S.C. §13a-1(a). This conclusion flows from the fact that venue is improper in this district, whether that issue is evaluated pursuant to 7 U.S.C.§13a-1(e) or 28 U.S.C.§1391.

2. To the extent that the Complaint purports to allege that Brooks defrauded an unnamed bank with which Brooks' unnamed employer was in some unidentified fashion "affiliated", the Complaint fails to allege fraud with particularity as required by Rule 9(b), Fed. R. Civ. P., (and thus fails to state a claim upon which relief can be granted).

3. Based on the decision in *CFTC v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 529 (S.D.N.Y. 2008), this Court lacks personal jurisdiction over Brooks.

4. To the extent the Court deems the allegations of the Complaint insufficient to enable the Court to determine the foregoing matters (in particular because of the inconsistent factual allegations of the Complaint, which are not plead in the alternative), the Court should require the Commission to file a more definite and certain Complaint, clarifying, among other matters, the alleged relationship between Brooks' employer and the bank with which it is allegedly affiliated, and the mechanism by which that affiliation is alleged to have led the bank to be defrauded, so

that the Court can properly determine the basis upon which the Commission claims venue lies in this District.

5.  Should the Court determine that this action should not otherwise be dismissed, for reasons of convenience and in the interests of justice, the case should be transferred to the U.S. District Court for the Southern District of Texas, where Brooks resides, resided and worked at the times of the acts complained of, and where, if at all, he committed such acts and the witnesses, if any, to such acts are likely to be found.

### Introduction and Facts

This case arises out of actions Plaintiff, the CFTC, alleges Brooks took between November, 2010 and October 20, 2011 (the "Relevant Period"). Complaint, ¶1. Brooks is and throughout the Relevant Period was a resident of Houston, Texas. Brooks Decl. ¶2. During the Relevant Period, Brooks worked in the Houston, Texas office of an entity called Citigroup Energy, Inc. ("CitiEnergy"). Complaint, ¶10; Brooks Decl. ¶¶3-6.[1] All of the actions allegedly taken by Brooks occurred (if at all) in the course of his employment. Complaint, ¶¶1 – 4, 11 -- 21. To the extent, if any, that Brooks engaged in any of the conduct described in the Complaint, Brooks did so from the Houston, Texas office of his employer, CitiEnergy. Brooks Decl. ¶¶5, 6-8, 12-15.

Brooks' job for CitiEnergy was to trade over-the-counter instruments as well as traditional futures contracts for the account of his employer, CitiEnergy. Complaint, ¶11; Brooks Decl. ¶9. The traditional futures contracts he traded were authorized by the Commission to be

---

[1] Brooks was always told that he worked for Citigroup Energy, Inc. and that's what his business card said. Brooks Decl., ¶4, Exhibit A. For reasons unknown, Brooks' letter of employment stated that his employer would be an entity called Citicorp North America, Inc., a Delaware corporation. Upon information and belief, that entity administers payroll for Citigroup Energy, Inc. and other affiliated Citi entities. Brooks' actual employer was Citigroup Energy, Inc. Brooks Decl. ¶4.

traded and cleared on registered contract markets.  (It bears mentioning that Brooks was not a member of any such markets during the Relevant Period. Brooks Decl. ¶10).  For such "plain vanilla" futures contracts, daily settlement prices are publicly reported, and open positions are valued based on those settlement prices.[2] Brooks Decl. ¶11. Because there are published daily settlement prices for such contracts, traders, like Brooks, who place orders for the trades for their employers' accounts, are not relied on by their employers to determine the value of open positions after the daily settlement prices are posted.  Those values are determined by looking to the posted settlement prices. That was the practice at CitiEnergy during Brooks' employment. Brooks Decl. ¶11. Those more traditional types of contracts are not the types of contracts involved in the activity complained of in this case.

The contracts involved in the CFTC's allegations in this case were *not* traditional futures contracts traded on an organized "contract market", commonly known as a futures exchange, such as the NYMEX referenced in paragraphs 12 and 13 of the Complaint.  They were individually negotiated swaps between traders.[3]   Usually, the transactions were conducted through a third-party broker.[4]  The swaps involved in this matter were cleared through a service called "Clearport" operated by the CME Group (of which NYMEX is a contract market).  This "clearing process" is intended to reduce what is known as "counter-party risk" – the risk that the

---

[2] For general descriptions of futures transactions on regulated exchanges, *see Strobl v. N.Y. Mercantile Exch.,* 768 F. 2d 22, 24 (2d Cir. 1985); *Leist v. Simplot,* 638 F.2d 288 (2d. Cir. 1980), *aff'd sub nom., Curran v. Merrill Lynch, Pierce Fenner & Smith,* 425 U.S. 353 (1982).

[3] For a generalized description of "swaps", and how they function,  *see In re Amaranth Natural Gas Commodities Litigation,* 587 F. Supp.2d 513, 522 – 23 (S.D.N.Y. 2008).  For a more specific description of the swaps involved in this case and the "ClearPort" clearing function, *see* **http://www.cmegroup.com/trading/energy/files/EN-128_CombinedEthanol_final.pdf** (page 4)

[4] After the over the counter trade was brokered, the third-party broker would send the trade for clearing to a clearing platform called ClearPort, which is owned by CME Group.  In isolated instances, the trader opposite Brooks sent the trade to ClearPort.  Brooks never sent the trade to ClearPort. Brooks Decl. ¶11, FN1.

opposing party with whom the swap was negotiated in the first instance will fail to perform its contractual obligations. But clearing the swap through ClearPort does not create the same type of liquidity and value transparency that is usually associated with traditional futures contracts. The terms of the swaps involved in this matter were not as standardized as those of contracts traded on contract markets. As a result, the value of any given swap at any given point in time was *not* measurable simply by reference to open market transactions in identical contracts, the prices of which are publicly reported, or even to published, daily settlement prices of other swaps cleared through ClearPort. For contracts traded in the over-the-counter markets, like the swaps which are the subject of this case, human judgment is required to estimate the price that would be received or paid if the contract were liquidated at a particular time.[5]

The CFTC in this case alleges that Brooks broke the law by "mismarking" the values of the open (i.e., unliquidated) positions in the instruments that were traded over-the-counter – i.e., *not* on any recognized exchange. According to Plaintiff's allegations, after Brooks traded a "Platts" contract in the over-the-counter market, Brooks was required to regularly report to CitiEnergy his estimate of the value of that contract by "entering position information" . . . "into the bank affiliate's systems". Complaint, ¶2. The CFTC alleges Brooks knowingly reported incorrect values for the open (i.e., unliquidated) Platts contracts established for CitiEnergy's account through Brooks' efforts as a CitiEnergy employee by making manual entries of incorrect contract values in CitiEnergy's internal trade booking system. *Id.*

*That is the sum and substance of the Complaint. There is no allegation that Brooks*

---

[5] It is because of this circumstance that mis-marking of such over-the-counter futures contracts is, in theory, possible. If, as with exchange-traded securities and exchange-traded futures contracts, current market values of swaps could be ascertained simply by referencing the most current publicly reported prices at which *identical* contracts had been formed of liquidated., the owner of the swap positions (e.g., CitiEnergy) would not need to rely on traders to price the open contracts; they could simply consult published prices.

*interacted with the NYMEX.  There is no allegation that the alleged mis-marking was reported to or in some other fashion affected the prices of other swaps cleared through ClearPort. There is no allegation that Brooks improperly initiated any trade for his employer's account.  There is no allegation that Brooks did any business in this district that gives rise to the claim asserted by the Commission.*

Whether Brooks mismarked in CitiEnergy's records the values of the swaps he purchased for CitiEnergy's account as alleged by the Commission, and whether if he did so act, he broke the law, is not at issue in this motion.  What is at issue here is whether the Commission has properly asked this Court to resolve those issues.  It has not.

The basic and incontrovertible facts concerning for whom Brooks worked (CitiEnergy), where he worked (at CitiEnergy's Houston, Texas office), and the CFTC's allegation of what he wrongfully did while working for CitiEnergy at its Houston, Texas office (knowingly entered incorrect valuation data into CitiEnergy's computers for positions that had already been properly established for CitiEnergy's account)  lead to the conclusions that (a) this is not  "the proper district court of the United States" within which the CFTC is authorized to bring an action against Brooks pursuant to 7 U.S.C. §13a-1(a), and (b)  venue in this district is improper under either 7 U.S.C. § 13a-1(e) or 28 U.S.C.§1391.  Brooks is not found in this district, is not an inhabitant of this district, and does not transact business in this district.  The act or practice complained of is not alleged to have occurred in this district, and it is clear that if the act or practice complained of in fact occurred, it did not occur in this district.  Thus, venue does not lie in this district pursuant to either 7 U.S.C. § 13a-1(e) or 28 U.S.C. §1391.

If venue does not properly lie in this district, then this is not "the proper district court of the United States" within the meaning of 7 U.S.C. §13a-1(a), and the CFTC has no authority to

bring this action, at least not in this District.  Further, the same facts that demonstrate these propositions (a) establish that, under the principles discussed in *In re Amaranth Natural Gas Commodities Litigation*, 587 F. Supp. 2d 513, 526-527 (S.D.N.Y. 2008) and under the rule of decision in *CFTC v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 529 (S.D.N.Y. 2008), this court lacks personal jurisdiction over Brooks, and (b) suggest that in all events, this is an inconvenient forum for at least Brooks and that in the interests of justice, if this case is not dismissed outright, it should be transferred to the Southern District of Texas where venue is proper, and the case should have been brought in the first instance.

The Commission, evidently recognizing these problems with the forum it selected, seeks to cloud the issue.  It alleges, and repeatedly references, that Brooks was employed by "an affiliate [never named in the Complaint] of a large commercial bank [also never further identified in the Complaint] with its principal place of business in New York, New York." Complaint, ¶10.  The Complaint makes the conclusory allegations (at ¶¶3 and 25) that the "bank" sustained losses and (at ¶28) that Brooks "cheated or defrauded or attempted to cheat or defraud the bank and its affiliate".  But the complaint is devoid of any allegations stating, with particularity as required by Rule 9(b), Fed. R. Civ. P., by what means "the bank" was or even might potentially have been defrauded by the conduct alleged.  Nowhere in the Complaint is there an allegation that Brooks made any representation to the "bank", or that any of the representations he is alleged to have made to his employer were communicated to, or intended to be communicated to, this unidentified bank.[6]  There is no allegation that the unidentified bank

---

[6] The CFTC does allege, inconsistently and not in the alternative, that Brooks' entries were made "into the bank affiliate's systems" (Complaint, ¶2) and later describes apparently the same systems as "the bank's computer system" (Complaint, ¶¶15, 18).  As Brooks' Declaration shows, however, all of his actions were taken at CitiEnergy's offices and, to his knowledge, on CitiEnergy's computer systems.

was at any time even aware of the information Brooks allegedly conveyed to his employer, much less how the bank relied or might have relied on the information if it had been informed of it, and was damaged. The Commission affirmatively alleges that the trades were made "for and on behalf of an affiliate of the bank". Complaint, ¶14. There is not even a hint in the Complaint how the unidentified bank might arguably have been cheated or defrauded by anything Brooks is alleged to have done. The Commission does not allege that Brooks' employer was, for example, a wholly owned and fully guaranteed subsidiary of this unidentified bank.

The facts of the unnamed employer's identity and its relationship to its unidentified "affiliate" make clear why the Commission failed to allege any of these particulars: the "bank" the CFTC so obliquely references in the Complaint is almost certainly CitiBank, N.A. ("CitiBank") And, while CitiBank and CitiEnergy are part of the same corporate family, nothing in the publicly available material concerning that corporate family remotely suggests that CitiBank directly or indirectly owns CitiEnergy or guarantees CitiEnergy's obligations such that it is (a) likely that CitiEnergy would be passing on to the Bank information about CitiEnergy's trading positions in the commodity markets, or (b) that CitiBank would be relying on information about such matters to its detriment.

CitiEnergy is a Delaware corporation located in Houston, Texas. Declaration of Susan E. Dzyacky ("Dzyacky Decl.") ¶2. Publicly available information indicates that CitiEnergy and CitiBank have a common, ultimate parent entity, but no other relationship. *Id.,* ¶5. Nothing in the publicly available information about these two separate and distinct legal entities suggests how a loss to CitiEnergy would result in a loss to CitiBank, or why the values of unliquidated swaps on CitiEnergy's books would be reported to CitiBank for any purpose. The Complaint offers no explanation for these improbable circumstances. The Court should not presume that

there are facts which would support the CFTC's conclusory allegations that these matters occurred.   Absent a more particular statement of the facts, the Court should ignore such improbable conclusions, treat this case as one involving alleged wrongdoing that occurred, if at all, in Houston, Texas directed at an entity based there, and decline to entertain the Commission's action.

## ARGUMENT

I.      <u>The Case Should Be Dimissed Because This Is Not The Proper Forum For The CFTC To Assert and Pursue Its Claim Against Brooks.</u>

   A.      **This is not "the proper district court of the United States" within the meaning of 7 U.S.C. §13a-1(a).  Consequently, the Commission is acting beyond its authority to bring an action against Brooks in this District, and venue is improper.**

The CFTC alleges that this Court has jurisdiction over this action pursuant to 7 U.S.C. §13a-1 (Complaint, ¶7) and that venue properly lies with this Court pursuant to 7 U.S.C. §13a-1(e). Complaint, ¶8.  7 U.S.C. §13a-1 doesn't actually confer jurisdiction on this Court.[7]  By its express terms, that statute actually grants authority to the CFTC to "bring an action in the *proper district court of the Unites States . . . .*" (emphasis supplied).  Plainly read, the statute says that unless the CFTC initiates its action in the "proper" district, it acts in excess of its statutory authority.  That is what the CFTC is doing here.

7 U.S.C. §13a-1(e) defines what "the proper district court of the United States" is.  That statute provides that the Commission may bring actions authorized by "this section" – i.e., 7 U.S.C. §13a-1 – "in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur ..."

---

[7] The other allegations of the Complaint, however, are sufficient to show that, were this the "proper" district court – i.e., the court in which the Commission is authorized to bring this action – the case is one over which this court would have subject matter jurisdiction pursuant to 28 U.S.C.§§1331 and 1337.

This district does not meet that description under the facts of this matter. Brooks is not found in, nor is he an inhabitant of this district. While the Commission has loosely made allegations in the Complaint calculated to create the impression that Brooks *formerly* transacted business in this district, it stopped short of actually alleging that he did so. It has not even come close to alleging that Brooks "transacts" business in this district now. The last action attributed to Brooks by the Commission in the Complaint occurred more than two years ago. Nor has the CFTC alleged that any act or practice which it alleges violated the Commodity Exchange Act occurred, is occurring, or is about to occur in this district. Based on the facts of this matter, the U.S. District Court for the Southern District of Texas is "the proper district court of the United States" referenced in 7 U.S.C.§13a-1(a) in which the Commission was authorized to bring its action against Brooks. Under the plain language of the statute that grants the Commission authority to bring an action against Brooks based on the circumstances alleged in the Complaint, the CFTC is *not* authorized to sue Brooks in this district, and venue does not lie in this district.

7 U.S.C. §13a-1(e) is, by its express terms, permissive. Thus, the Commission might alternatively argue that it can rely on the general venue statute, 28 U.S.C. §1391. If Section 13a-1(a) can properly be construed to authorize the Commission to bring an action pursuant to that statute in a district court in which venue lies otherwise than pursuant to 7 U.S.C. §13a-1(e), the general venue statute is of no avail to the Commission in this case. Under the general venue statute, the Commission could bring its case against Brooks either in the district where Brooks resides (the Southern District of Texas), or the district in which a substantial part of the events or omissions giving rise to the claim occurred (again, the Southern District of Texas).

Because Brooks is an individual who resides in Houston, Texas, and all of his conduct allegedly giving rise to the claim asserted by the Commission occurred, if at all, in Houston,

Texas, the U. S. District Court for the Southern District of Texas is the only Court in which the CFTC is permitted to sue Brooks for the conduct alleged in the Complaint. Accordingly, this action should be dismissed as an action in excess of the CFTC's express authority and for improper venue.

> **B.** **The Court should ignore the CFTC's allegations concerning any alleged fraud on the "large commercial bank having its principal place of business in New York, New York" because those allegations are not stated with particularity as required by Rule 9(b), Fed. R. Civ. P. and, under the circumstances, do not state a plausible claim.**

Rule 9(b), Fed. R. Civ. P., requires that all allegations of fraud or mistake be stated with particularity. This means the pleader must state with specificity the who, what, when where and how of an alleged fraud. *ATSI Commc'nc v. Shaar Fund, Ltd,* 493 F.3d 87, 99 (2d Cir. 2007); *In re Amaranth Natural Gas Commodities Litig.,* 587 F. Supp. 2d 513, 535 – 41 (S.D.N.Y. 2008). Here, the CFTC's complaint doesn't come close to satisfying the requirements of the Rule, particularly insofar as it alleges that "a large commercial bank with its principal place of business in New York, New York" was defrauded by Brooks. To begin with, the Complaint does not even identify Brooks' alleged employer, for whose account the swaps he allegedly mismarked were acquired and held, much less its bank affiliate. Thus, the Court in this case would not know, but for Brooks' declaration and this motion, who the alleged primary victim of Brooks supposed fraud was, much less the identity of that entity's bank affiliate[8]. Nothing in the Federal Rules countenances such opacity in cases involving alleged fraud. To the contrary, Rule 9(b), Fed. R. Civ. P., requires such matters to be alleged with particularity.

Beyond this effort at concealment, Brooks and the Court are left to wonder how and why

---

[8] Even the identity of CitiEnergy's bank affiliate is a matter of speculation. While it is likely that CitiBank, N.A. is the referenced entity, CitiGroup, Inc. has more than one bank within the corporate family, almost any of which could meet the description of the bank affiliate used in the Complaint.

Brooks' reports to his employer (a) ever came to the attention of the employer's affiliated bank, and (b) caused the bank and Brooks' actual employer both to sustain the same loss. Rule 8, Fed. R. Civ. P. requires the pleader to allege facts stating a plausible basis for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563-64 (2007); *In re Amaranth Natural Gas Commodities Litigation,* 730 F.3d 170, 180 (2d Cir. 2013). Here, the CFTC's complaint alleges no such thing, at least insofar as it alleges that an unnamed bank affiliated with Brooks' employer sustained a $40 million loss because Brooks' employer liquidated swap positions acquired and held for its own account (not the affiliated bank's account) at a loss.[9] Ordinarily, when one member of a corporate family sustains a loss in the course of its business, that loss is not also incurred by another member of its corporate family. The insulation of one entity from the losses and liabilities of other entities is, after all, the whole point of creating separate legal entities. This is particularly the case among "affiliates" -- i.e., entities that have a common, ultimate parent company, but which do not directly or indirectly own the other. But that seems to be the premise of the CFTC's allegations concerning the loss allegedly sustained by the bank-affiliate described in the Complaint.

Absent much more detailed allegations of fact which plausibly explain the CFTC's theory of how this unnamed bank was defrauded and lost $40 million because Brooks allegedly mismarked the value of swaps acquired, held, and ultimately liquidated for the account of the bank's affiliate, the Court should treat these allegations as what they appear to be: unsubstantiated, implausible allegations made by the Commission in an effort to justify its decision to hale a Houston, Texas resident before this court to respond to allegations that he took

---

[9] Indeed, it is not even clear from the allegations of the Complaint whether the loss was sustained upon liquidation of the conventional futures contracts held for CitiEnergy's account because the losses on those positions were not offset by gains on the swaps the Commission alleges Brooks mismarked, vice-versa, or in some other fashion.

certain actions in Houston, Texas while in the employ of a Houston, Texas based company that happens to have a New York based bank as an affiliate.  These insufficient allegations should be ignored for purposes of assessing whether this action was properly filed in this district.  To the extent they form a basis for some claim asserted against Brooks, that claim should be dismissed for failure to state a claim upon which relief can be granted.

**C.      Under the rule laid down in *CFTC v. Amaranth Advisors, L.L.C.*, this case should be dismissed for lack of personal jurisdiction over Brooks.**

In *CFTC v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 529 (S.D.N.Y. 2008), the court held that for cases arising under Commodity Exchange Act filed in a New York federal district court, New York's long-arm statute, N.Y. C.P.L.R. § 302(a), governs the scope of personal jurisdiction.[10]  *Id.* (citing cases); *see also, In re Amaranth Natural Gas Commodities Litigation,* 587 F.Supp. 2d 513, 526- 27 (S.D.N.Y. 2008)(discussing due process requirements for a district court to exercise personal jurisdiction over a non-resident defendant in a case arising under federal law).  Following this rule of decision, this case should be dismissed for lack of personal jurisdiction over Brooks.

New York's long-arm statute, in Section 302(a)(1), permits a court to exercise personal jurisdiction over an out-of-state party if he "transacts any business within the state" and if the "cause of action aris[es] from" the business contacts. *Amaranth*, 554 F. Supp.2d at 530 (citing statute and cases).  The first element--transacting business-- requires a defendant to have " 'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.' " *Id.* (citing cases).    The second

---

[10] There is no obvious legal reason why, having litigated this legal question to a conclusion in that case, the CFTC should not be collaterally estopped from arguing for a different rule of decision in this case. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979).

element --"arising out of"-- requires "a substantial nexus" between the business transaction and the claim. *Id.*

The CFTC's Complaint does not allege any trade practice violation by Brooks in the placing or making of trades. Rather, the gravamen of the CFTC's Complaint is that Brooks "concealed losses by inflating the value of" a portion of the portfolio of positions he established for CitiEnergy's account. (Complaint, ¶2). According to the Complaint, the manner in which Brooks concealed losses was by "knowingly enter[ing] false inflated prices into an internal trade booking and valuation computer software system." (Complaint, ¶4). *In summary, the Complaint presents no challenge to the trades themselves. Rather, the Complaint attacks Brooks' alleged conduct in mis-stating the value of a portion of CitiEnergy's open swap positions to CitiEnergy.* Because it is undisputed that the CFTC's claim does not involve conduct in the making of trades or the placement of orders or any exchange or clearing platform, the location of the counterparties with whom Brooks negotiated the terms of the contracts, the location of any third party brokers that had a role in the process of contract formation, and the location of any clearing facility through which the contracts were cleared are irrelevant to the question of where the activity giving rise to the asserted claim took place.[11]

Brooks did not "purposefully avail himself of the privilege of conducting business in New York" when he allegedly input values into his employer's internal computer system in Houston, Texas. The decision in *In re Natural Gas Commodity Litigation*, 337 F.Supp.2d 498 (S.D.N.Y. 2004) provides a useful comparison. There, the court held that it did have personal

---

[11] In fact, it is not even a necessary element of the CFTC's claim against Brooks that Brooks was involved in the formation of the swaps he allegedly mismarked. If, as the CFTC alleges, Brooks had misreported the values of swap positions, those positions could have been established by some other trader and the claim now being made by the CFTC could still be asserted against Brooks. 7 U.S.C. §6b.

jurisdiction over an out-of-state defendant whose out-of-state acts were conducted "with the purpose of manipulating the market for natural gas futures on the New York Mercantile Exchange." Id. at 517. Although the defendant company had not actually traded natural gas futures on the New York Mercantile Exchange (NYMEX), its trading activities on a Texas-based internet system were sufficient to trigger personal jurisdiction *because those activities were intended to affect NYMEX prices*. In this case, by contrast, there is no claim or allegation that Brooks' trading was intended to affect prices at which transactions were made on NYMEX (or elsewhere). The sole cause of action asserted arises from Brooks' alleged concealment of losses from his employer.

As to the second element under the New York long arm statute, the Complaint does not arise out of any conduct that occurred in New York. It arises solely out of alleged conduct by Brooks who was undisputedly in Texas if and when he engaged in the conduct alleged in the Complaint. Thus, under the test spelled out in *CFTC v. Amaranth Advisors, L.L.C.,* 554 F. Supp. 2d at 529, Brooks is not subject to this Court's jurisdiction.

The outcome of the personal jurisdiction analysis is the same, for virtually identical reasons, if the analysis is conducted simply on the basis of whether haling Brooks into this court under the facts of this case comports with due process. Because Brooks was not present in this jurisdiction, and did not intentionally avail himself of the privilege of doing business in this district, he did not have even minimum contacts with this district. Even assuming that Brooks, as alleged, mismarked the values of the swaps held for CitiEnergy's accounts, he would not have had any reason to expect that such conduct would have effects in this district. It would thus be unreasonable under the circumstances of this case for the court to exercise personal jurisdiction over him. *In re Amaranth Natural Gas Commodities Litigation,* 587 F. Supp. 2d at 527 (citing

cases).

There is no personal jurisdiction over Brooks here, and venue is improper.  The case should be dismissed.

> **D.     Should The Court Be Concerned That The CFTC Can Properly State A Claim Against Brooks That It Is Authorized To Pursue In This Venue, It Should Require The CFTC To File A More Definite Statement, Alleging With The Requisite Particularity The Facts Supporting Its Allegations That Brooks Somehow Defrauded The Bank Affiliated With Brooks' Employer Or That Personal Jurisdiction Exists and Venue Is For Some Other Reason Proper In This District.**

Rule 12(e), Fed. R. Civ. P. authorizes a court to require a plaintiff to file a more definite statement of its claim.  Should the court conclude that the Commission's allegations in this case leave some doubt as to the propriety of dismissal of this action, the court should require the Commission to file a more definite statement of its claim.  In that more definite statement, the Commission should be required to properly invoke the jurisdiction of this court, allege with particularity as required by Rule 9(b), Fed. R. Civ. P., each fact upon which it predicates its contentions that Brooks' employer and the bank affiliate of Brooks employer were defrauded by Brooks, and in the process describe each act by Brooks which the CFTC contends, individually or collectively, authorizes the Commission to bring this action in this district and this Court to exercise personal jurisdiction over him.

## II. Alternatively, The Court Should Transfer Venue to the Southern District of Texas (Houston Division) As A Matter Of Convenience

28 U.S.C. §1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The decision to transfer a case rests in the discretion of the district court and should

be granted based on "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). *See also Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) ("Motions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis."). The purpose of transferring venue is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Morris v. Ernst & Young, LLP*, No. 12 CV 0838 (KMW), 2012 WL 3964744, at *2 (S.D.N.Y. Sept. 11, 2012).

Under Section 1404, the CFTC's choice of forum is merely a factor that this Court may consider. *See U.S. Commodity Futures Trading Comm'n v. Reisinger*, No. 8:11 CV 233, 2011 WL 5037181 (D.Ne. Oct. 24, 2011) (granting defendant's motion to transfer venue to the United States District Court for the Northern District of Illinois, even though the CFTC alleged venue was proper in the United States District Court for the District of Nebraska under Section 13a-1(e)); *see also Commodity Futures Trading Comm'n v. Cromwell Fin. Services, Inc.*, No. Civ. 05-CV-210-JD, 2006 WL 435451, at *4 (D.N.H. Feb. 22, 2006) (in granting defendant's motion to transfer venue to the United States District Court for the Southern District of Florida, the Court held that the CFTC's choice of venue under Section 13a-1(e) "deserve[d] no particular weight").

Deciding a Section 1404(a) motion to transfer venue requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether, considering the convenience of the parties and witnesses, and the interests of justice, a transfer is appropriate. *Morris at *2.*

### A.    This action could have been brought in the United States District Court for the Southern District of Texas (Houston Division).

Subject matter jurisdiction, personal jurisdiction and venue were all proper in the United States District Court for the Southern District of Texas (Houston) at the time the CFTC's complaint was filed.  Brooks currently resides in Houston, Texas, lived and worked there when he (allegedly) engaged in the conduct on which the CFTC's claim is predicated, and the specific acts alleged to give rise to the claim occurred, if at all, in Houston, Texas.  This action could have been brought in the District Court for the Southern District of Texas (Houston Division).

### B.    Considering the convenience of the parties and witnesses, and the interests of justice, a transfer to the United States District Court for the Southern District of Texas (Houston) is appropriate.

Courts in this district recognize that the following factors must be evaluated to determine if transfer of venue is warranted under Section 1404:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Morris* at *3.  "These factors are not to be applied in a mechanical or formulaic manner.  Rather, they, and any other factors peculiar to the particular case in question, serve as guideposts to the Court's informed exercise of distriction."  *Id.* (citations omitted).  Here, these factors lead to the conclusion that transfer to the U.S. District Court for the Southern District of Texas is appropriate (if the case is not to be dismissed outright).

With respect to the first and second factors (convenience of parties and witnesses), this Court has noted that convenience of the witnesses "is typically the most important factor when considering a motion to transfer."  *Id.* at *4.  These factors clearly favor venue in the Southern District of Texas (Houston Division).   Brooks and his supervisors were all in Houston at the

time of the alleged conduct.    In addition, Texas is hardly an inconvenient venue for the CFTC.

No CFTC personnel are fact witnesses in this case.  They did not participate in, or witness, any

of the events alleged in the Complaint.  If this matter continues in the Southern District of New

York, all of the witnesses for both sides will have to travel from Texas to New York for the

proceedings.  The only participants that would not have to travel would be the CFTC's lawyers,

as the courthouse is steps from the CFTC's New York office.  But the convenience of counsel for

any of the parties is not one of the factors relevant to a Section 1404 analysis.

    The third and fourth factors, the location of relevant documents and ease of access to

sources of proof and locus of operative facts, also both weigh in favor of transfer to the Southern

District of Texas (Houston).  This Court has held that the "locus of operative facts is a primary

factor in determining whether to transfer venue" because it has a "bearing on where the center of

gravity of the action rests."  *Id.* at *4.  As stated above, the gravamen of the CFTC's complaint is

that Defendant Brooks "concealed losses by inflating the value of" a portion of his trade

portfolio.  (Complaint, ¶2).  These events allegedly occurred in the Houston Office on

CitiEnergy's internal software system, not on, or through trades placed on, the New York

Mercantile Exchange in New York.  *See City of Pontiac Gen. Employees' Ret. Sys. v. Stryker

Corp.*, No. 10 Civ. 376, 2010 WL 2035130, at *4 (S.D.N.Y. May 21, 2010) ("[T]he locus of

operative events in a securities action is where the alleged misrepresentations were made.")

    Because the witnesses presumably reside in Houston where the locus of the events

occurred, the fifth factor favors the Southern District of Texas.  This court would have no

subpoena power over any CitiEnergy employees Brooks (or the CFTC) may need to call as

witnesses at the trial of this case.

    The sixth factor clearly favors Brooks, as the CFTC has far greater resources for travel

than does Brooks, a presently unemployed individual.

The seventh factor is neutral. As this case arises exclusively under federal law, no federal district court has any particular advantage over another in ascertaining the applicable law.

With regard to the eighth and final factor, as a general matter, this Court has recognized that a plaintiff's choice of forum is entitled to significant consideration. *Morris* at *6. However, here, the Court should accord no deference to the CFTC's choice of forum because it seems calculated to inconvenience the defendant, rather than to serve the convenience of the Commission. None of the operative facts of this case occurred in or implicate New York. *See Securities and Exchange Comm'n v. KPMG, LLP*, No. 03 Civ. 671 (DLC), 2003 WL 1842871, at *3 (S.D.N.Y. Apr. 9, 2003) (acknowledging that a plaintiff's choice of forum commands less deference when the "operative facts upon which the litigation is brought bear little material connection to the chosen forum").

## Conclusion

Before choosing to file this case in New York, CFTC was well aware that Brooks worked in Houston, as did his supervisors, and everyone else employed at Citigroup Energy, Inc. CFTC also knew that if Brooks mis-valued a portion of his portfolio as the CFTC alleges, his conduct occurred in Houston. The lengths to which the CFTC has gone in its Complaint to create the false appearance of actual connections between the alleged wrongdoing in this case and this forum, despite the absence of any real such connections, suggests strongly that the CFTC recognized that this case does not belong in this district, but chose nonetheless to file it here for some improper purpose. The case should be dismissed or, in the alternative, it should be transferred to Texas.

*[Signature page following]*

Respectfully submitted,

THOMPSON COBURN LLP

By _s/Richard T. Reibman_
Richard T. Reibman
Thompson Coburn, LLP
55 E. Monroe Street, 37th Flr.
Chicago, IL 60603
312-580-2205
rreibman@thompsoncoburn.com

and

By _s/Kenton E. Knickmeyer_
Kenton E. Knickmeyer
One U.S. Bank Plaza
St. Louis, MO  63101
314-552-6064
kknickmeyer@thompsoncoburn.com

Attorneys for Defendant