UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COMMODITY FUTURES TRADING
COMMISSION,

Plaintiff,

v.

JOHN AARON BROOKS,

Defendant.

13-CV-6879 (KMW)

ECF CASE

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE


COMMODITY FUTURES TRADING
COMMISSION
Division of Enforcement
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9700

December 9, 2013

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

    A.    Brooks's Employment by a New York-based Employer.......................................2

    B.    Brooks's Scheme to Defraud Citi Energy and Citigroup.......................................3

    C.    The CFTC's Investigative Testimony...................................................................4

LEGAL STANDARDS FOR THESE MOTIONS .......................................................................5

ARGUMENT .........................................................................................................................6

I.     THIS COURT HAS PERSONAL JURISDICTION OVER BROOKS ............................7

    A.    This Court Has Personal Jurisdiction Because Brooks Was Served Under
          the Commodity Exchange Act's Nationwide Service of Process Provision...........7

         1.    Brooks Was Properly Served ...................................................................7

         2.    The Requirements of Due Process Have Been Met...................................8

    B.    Defendant's Argument Based on New York Long Arm Statutes Is Wrong.........10

II.    THIS COURT IS A PROPER VENUE ........................................................................13

    A.    Venue is Proper Pursuant to the Commodity Exchange Act's Special
          Venue Provisions ..............................................................................................13

    B.    Proper Venue Would Lie In This District Under the General Federal
          Venue Statute ....................................................................................................16

III.   DEFENDANT HAS FAILED TO SHOW THAT THE INTERESTS OF JUSTICE
      REQUIRE TRANSFER OF VENUE. .........................................................................17

IV.   THE COMPLAINT SATISFIES RULE 9(b) AND DOES NOT REQUIRE A MORE
      DEFINITE STATEMENT...........................................................................................21

CONCLUSION.....................................................................................................................25

TABLE OF AUTHORITIES

CASES

*Ali v. Mukasey,*
    529 F.3d 478 (2d Cir.2008)..........................................................................11

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)..........................................................................22

*Big Apple Pyrotechnics and Multimedia Inc. v. Sparktacular Inc.,*
    No. 05 Civ. 9994 (KMW), 2007 WL 747807.......................................2, 5, 19, 20

*Bd. of Cnty. Comm'rs of Custer Cnty. v. Wilshire Oil Co. of Texas,*
    523 F.2d 125 (10th Cir. 1975) ....................................................................14

*Brown v. Royal Caribbean Cruises, Ltd.,*
    99 Civ. 2435 (KMW), 2000 WL 34449703 (S.D.N.Y. Aug. 24, 2000) .......................6, 23

*Chew v.Dietrich,*
    143 F.3d 24 (2d Cir. 1998)...........................................................................8

*CFTC v. Amaranth Advisors, L.L.C.,*
    554 F. Supp. 2d 523 (S.D.N.Y. 2008)........................................................10, 12

*CFTC v. Am. Metals Exch. Corp.,*
    693 F. Supp. 168 (D.N.J. 1988) ..................................................................22

*CFTC v. Giddens,*
    1:11-CV-2038-WSD, 2012 WL 603592 (N.D. Ga. Feb. 24, 2012)................................22

*CFTC v. Reisinger,*
    11 C 8567, 2012 WL 2075825 (N.D. Ill. June 8, 2012) ........................................23

*CFTC v. Savage,*
    611 F.2d 270 (9th Cir. 1979) ......................................................................16

*CFTC v. Worldwide Commodity Corp.,*
    366 F.Supp.2d 276 (E.D. Penn. 2005) ....................................................7, 10, 14

*D.H. Blair & Co., Inc. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006)..........................................................................13

*Eastland Const. Co. v. Keasby & Mattison Co.,*
    358 F.2d 777 (9th Cir. 1966) ....................................................................14

*Exovir, Inc. v. Mandel*,
    No. 94 Civ 3546 (KMW), 1995 WL 413256 (S.D.N.Y. July 12, 1995)...........................12

*Ford Motor Co. v. Ryan*,
    182 F.2d 329 (2d Cir. 1950)...................................................................................18, 22

*Gem Corrugated Box Corp. v. Mead Corp.*,
    189 F. Supp. 584 (S.D.N.Y. 1960) .................................................................................15

*Geller Media Management, Inc. v. Beaudreault*,
    910 F.Supp. 135 (S.D.N.Y. 1996) .................................................................................17

*Hugeclick.com v. Vanderpol*,
    No 00 Civ. 1976 (KMW), 2001 WL 170803 (S.D.N.Y Feb. 21, 2001) ...........................21

*Jordache Enterprises, Inc. v. Brobeck, Pfleger, & Harrison*,
    1994 WL 7460, No. 92 Civ. 9002 (KMW) (S.D.N.Y. March 7, 1994)...........................25

*Kelly v. MD Buyline, Inc.*,
    2 F.Supp.2d 420 (S.D.N.Y. 1998) .....................................................................17, 20, 21

*Hallwood v. Gotham*,
    104 F. Supp.2d 279 (S.D.N.Y. 2000).............................................................................10

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y.1992), *aff'd*, 23 F.3d 398 (2d Cir.1994)...................................6

*Lee v. Ply\*Gem Industries, Inc.*,
    593 F.2d 1266 (D.C. Cir. 1979) ....................................................................................14

*Mariash v. Morrill*,
    496 F.2d 1138 (2d Cir. 1974)....................................................................................7, 8

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993)...........................................................................................5

*Omni Capital Int'l, Ltd., v. Rudolf Wolff & Co., Ltd.*,
    484 U.S. 97 (1987) ..................................................................................................7, 10

*Pure Oil Co. v. Suarez*,
    384 U.S. 202 (1966) .......................................................................................................6

*Ross v. Bolton*,
    904 F.2d 819 (2d Cir. 1990)..........................................................................................22

*Russell v. Hilton International of Puerto Rico, Inc.*,
    No. 93 Civ. 2552 (KMW), 1994 WL 38516  (S.D.N.Y. Feb. 4, 1994) ...........................19

*Schuler v. NIVS Intellimediea Technology Grp.*,
  11 Civ. 2484 (KMW), 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ...............................22

*SEC v. Apuzzo*,
  689 F.3d 204 (2d Cir. 2012).........................................................................................23

*SEC v Softpoint, Inc.*,
  2001 WL 43611, No. 95 Civ. 2951 (GEL) (S.D.N.Y Jan. 18, 2001). ..........................9, 10

*Snyder v. Eastern Auto Distributors, Inc.*,
  357 F.2d 552 (4th Cir. 1966) ........................................................................................14

*Steinberg & Lyman v Takacs*,
  690 F. Supp. 263 (S.D.N.Y 1988) ..............................................................................16, 17

*Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*,
  230 F.2d 511 (3d Cir. 1956).........................................................................................15

*U.S. v. Alcan Aluminum Corp.*,
  990 F.2d 711 (2d Cir. 1993).........................................................................................11

*U.S. v. Cheung*,
  555 F.2d 1069 (2d Cir. 1977)........................................................................................11

*U.S. v. Mendoza*,
  464 U.S. 154 (1984).....................................................................................................11

*U.S. v. Royer*,
  549 F.3d 886 (2d Cir. 2008)........................................................................................15

*U.S. v Svoboda*,
  347 F.3d 471 (2d Cir. 2004).........................................................................................15

## STATUTES AND OTHER AUTHORITY

7 U.S.C. § 13a-1(e) ...........................................................................................6, 8, 9, 14

15 U.S.C. § 77v ...........................................................................................................9

15 U.S.C. § 78aa ..........................................................................................................9

28 U.S.C. § 1391 ......................................................................................................6, 17

28 U.S.C. §1404...................................................................................................18, 19

28 U.S.C.§ 1406 ........................................................................................................25

Fed R. Civ. P. Rule 4(k)(1)(C) ......................................................................................8

Fed. R. Civ. P. 9(b). ...........................................................................................................6, 22

Wright & Miller, Fed. Prac. & Proc. § 1068.1 ..............................................................................8

Charles Alan Wright, et al., Fᴇᴅ. Pʀᴀᴄ. & Pʀᴏᴄ. § 3806 ...........................................................17

N.Y.Civ.Prac.L. & R. ("CPLR") § 302(a) ..........................................................................12, 13

Plaintiff Commodity Futures Trading Commission ("CFTC") respectfully submits this memorandum of law in opposition to Defendant John Aaron Brooks' ("Defendant" or "Brooks") motion to dismiss and, alternatively, to transfer venue.

## PRELIMINARY STATEMENT

Defendant moves to dismiss the complaint on the grounds of lack of personal jurisdiction and improper venue. Defendant's motion to dismiss the Complaint for lack of personal jurisdiction should be denied because Section 6c(e) of the Commodity Exchange Act (the "CEA"), the CEA's specific venue and service provision, expressly provides for nationwide service of process, and Defendant was served in Texas, which is indisputably within the United States. Defendant's motion to dismiss the complaint for improper venue also fails under the CEA's specific venue provision. This district is a proper district for the filing of this action against Brooks because he transacted business and his acts and practices at issue occurred in this district.

Defendant's motion for a more definite statement under Rule 12(e) should also be denied because adding detail to a pleading is not the purpose of Rule 12(e). Even if Defendant had a viable Rule 12(e) argument, which he does not, it has been rendered moot because victims, Citi Energy and Citigroup, both of which are New York-based businesses and are named in Plaintiff's opposition papers.

This action should not be transferred under 28 U.S.C. §1404(a) because (i) the CFTC's choice of this forum is entitled to significant consideration; (ii) the documents and certain sources of proof, including prior investigative testimony from non-party witnesses, are currently located in New York; and (iii) New York has been a convenient forum for the witnesses in the CFTC's investigation because many of them were represented by New York counsel. For these reasons, and those set forth below, the Defendant's motion should be denied in its entirety.

## STATEMENT OF FACTS

### A.  Brooks's Employment by a New York-based Employer

Brooks was employed by Citicorp North America Inc., ("Citicorp") a New York-based corporation . Compl. ¶ 10; Gotthard Decl. Ex. 1 at, 1.[1]  From November, 2010 through October, 2011 (the "Relevant Period"), Brooks served as a Director in the Commodities business within the Institutional Clients Group ("ICG") of New York- based Citigroup Inc. (along with its subsidiaries and affiliates, "Citi").  *Id.;* Kokal Decl. ¶ 9 and Ex. 3.[2]  The Defendant's employment agreement, like his business card, bore the registered trademark logo of Citi, which is used by Citi worldwide.  Gotthard Decl. ¶ 4; Brooks Aff. ¶ 4, Ex. A.  Brooks executed his Citicorp employment agreement with Regina Gotthard.  Gotthard Decl. ¶ 1.  Subsequently, Brooks accepted New York-based Citicorp's offer of employment by returning his employment agreements to Ms. Gotthard at 390 Greenwich Street, 4th Floor, NY, NY 10013.  *Id.* ¶ 5-6.  The Employment Termination Notice Policy was expressly governed by the laws of the State of New York as to all matters, including, but not limited to validity, construction, effect, performance and remedies.  *Id.* ¶ 7 and Ex. 1 at 8, fn.1.  Contrary to Brooks's affidavit that he was not "supervised by anyone other than CitiEnergy personnel" (Brooks Aff. ¶ 6), Brooks's supervisor, Geoff Hicks, was also an employee of New York-based Citicorp.  Gotthard Decl. ¶¶ 8-10.

---

[1] As Brooks's motion attacks personal jurisdiction and venue, the Court may consider documents outside the pleadings, such as the affidavits and exhibits submitted by the parties, using the standards set forth in Rule 56.  *Big Apple Pyrotechnics and Multimedia Inc. v. Sparktacular Inc.*, No. 05 Civ. 9994 (KMW), 2007 WL 747807 at *1 (S.D.N.Y. Mar. 9, 2007).  In addition to Defendant Brooks's affidavit and the exhibits thereto, Plaintiff's memorandum here will also refer to the Declarations of Regina Gotthard ("Gotthard Decl."), Scott Welsh ("Welsh Decl."), and Trevor Kokal ("Kokal Decl.").

[2] According to Citigroup's website, Citi is "the leading global bank."  *See* http://www.citigroup.com/citi/about/citi_at_a_glance.html (last viewed Dec. 9, 2013).

B.      **Brooks's Scheme to Defraud Citi Energy and Citigroup**

For most of the days during the Relevant Period, Brooks schemed to defraud Citigroup

Inc. and its affiliate Citigroup Energy Inc. ("Citi Energy") by trading and mismarking Chicago

Ethanol (Platts) Swap Futures ("NYMEX Ethanol Futures") in order to conceal his losses in

other ethanol products.  Compl. ¶¶ 2-3, 14-15, 28, 35.

According to its corporate filings, Citi Energy maintains its principal executive office and

business address in New York City.  Kokal Decl. ¶ 10-11, Exs. 4-5.  The NYMEX Ethanol

Futures were, and remain, governed by the rules of the New York Mercantile Exchange

("NYMEX"), a designated contract market under the Commodity Exchange Act, that is located

in New York, New York.  *Id.* ¶ 13; Compl. ¶¶ 12-13.  The terms of the NYMEX Ethanol Futures

are standardized per NYMEX rules and the contracts were cleared through NYMEX's ClearPort[3]

platform with personnel and customer service located in New York.  Kokal Decl. ¶ 15, 22-26.

Even though Brooks swears that he never conducted business in New York, (Brooks Aff. ¶ 13),

Brooks entered into certain of the NYMEX Ethanol Futures trades at issue with New York-based

counterparties.  Kokal Decl. ¶ 18 and Ex. 8.

The NYMEX Ethanol Futures contracts that Brooks entered into were carried on the

books of New York-based Citigroup Global Markets, Inc. ("CGMI"), a registered Futures

Commission Merchant in New York, New York.  *Id.* ¶ 16.  CGMI account statements show that

Brooks, on behalf of Citi Energy, maintained trading positions in NYMEX Ethanol Futures, to

which Brooks assigned false values.  *Id.* ¶ 16; Compl. ¶ 15.  He entered into the trades with

---

[3] ClearPort is a platform created in 2002 by NYMEX (and now operated as CME ClearPort, in Chicago, after the merger of NYMEX with the CME Group) that provides centralized counterparty clearing so that the credit risk of an over-the-counter trade is guaranteed by the central clearinghouse.  *See generally* CME ClearPort (http://www.cmegroup.com/clearing/files/CME_ClearPort_Brochure.pdf).

3

counterparties, including counterparties in New York, and promptly received trade confirmations from his broker that the trades were NYMEX Ethanol Futures and cleared on NYMEX ClearPort.  Kokal Decl. ¶ 17-18, 22 and Ex. 8.  The trade confirmations stated that if the contract could not be so cleared on ClearPort for whatever reason, then the contract was null and void, subject to further negotiation by the counterparties.  *Id.*, ¶ 23 and Ex 8.  The trade confirmations also indicated to Brooks that the trades were being placed for Citi Energy at a Citi Energy address in New York.  *Id.* ¶ 19.

Brooks acquired NYMEX Ethanol Futures in furtherance of his scheme to cover up trading losses in other ethanol products.  As NYMEX Ethanol Futures contracts expired, Brooks would increase his position by acquiring additional NYMEX Ethanol Futures contracts with later expiration dates, which he then mismarked when losses in other ethanol products occurred or increased.  Kokal Decl. ¶ 27.

Significantly, in his affidavit in support of his motion Brooks admits that he "was generally aware that CitiEnergy was, like a number of other entities, one corporate entity that was among the many entities owned, directly or indirectly, by CitiGroup."  Brooks Aff. at ¶8.  Citi Energy is owned by Citigroup such that when Brooks entered his false marks into Citi Energy's OpenLink system any overstated profits or losses associated with Brooks's mismarkings ultimately became part of Citi's consolidated financial statements.  Welsh Decl. ¶¶ 3-5.  Accordingly, Brooks caused losses to Citi Energy and Citigroup, both of which are New York-based  businesses.  *Id.* ¶ 5; Kokal Decl. ¶ 9-11, Exs. 3-5.

## C.    The CFTC's Investigative Testimony

The CFTC took Brooks's investigative testimony before filing its Complaint against him.  In his affidavit in support of his motion, Defendant states: "[i]n 2013, I was deposed by CFTC in

Houston." Brooks Aff. ¶ 15. Brooks omits the fact that he responded to every question asked by the CFTC by asserting his right against self-incrimination. Compl. ¶ 24; Kokal Decl. ¶ 30-31. Defendant also omitted that CFTC staff was in New York at the time of the testimony and that the questioning occurred via videoconference with Brooks in Houston with his counsel. *Id.* This was arranged by agreement with Brooks's counsel when it became apparent that Brooks was going to assert his right against self-incrimination to all CFTC questions. *Id.* ¶ 30. Defendant's self-serving affidavit thus is the first time the CFTC has heard Defendant speak about the allegations in the Complaint.

## LEGAL STANDARDS FOR THESE MOTIONS

Under the federal rules, a motion to dismiss generally accepts as true the well-pleaded factual allegations of a complaint. As to fraud claims, the law imposes additional requirements. "[T]he circumstance constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). This requires that the complaint "(1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

On a motion to dismiss under 12(b)(2) or 12(b)(3)[4] the Court may consider documents outside the pleadings, such as the affidavits and exhibits submitted by the parties. *Big Apple*, 2007 WL 747807 at *1. The facts should be viewed in the light most favorable to Plaintiff, the

---

[4] Defendant's Notice of Motion refers only generally to Rule 12 and Defendant's Memorandum of Law In Support of Defendant's Motion to Dismiss or For a More Definite Statement, or, Alternatively, to Transfer Venue ("Def. Mem.") does not specify which sections of Rule 12 Defendant seeks to invoke. Nevertheless, Defendants arguments are directed to venue and jurisdiction, so Rule 12(b)(2) and 12(b)(3) must be the bases for that motion. Defendant does not challenge the sufficiency of the pleadings with regard to the underlying claim. Similarly, although Defendant invokes Rule 9(b)'s specificity requirements in his memorandum of law, Defendant's arguments in that regard also are directed to the establishment of venue and jurisdiction.

nonmoving party, and the Court should not grant Defendant's motion unless there are no genuine

issues of material fact.  *Id.*  Where, as here, the motion was filed before discovery has begun,

"Plaintiffs need only make a *prima facie* showing as to jurisdiction."  *Id.*

Motions for a more definite statement pursuant to Rule 12(e) are disfavored and should

not be granted "unless the complaint is so excessively vague and ambiguous as to be

unintelligible and as to prejudice the defendant seriously in attempting to answer it."  *Brown v.

Royal Caribbean Cruises, Ltd.*, 99 Civ. 2435 (KMW), 2000 WL 34449703, at *9 (S.D.N.Y. Aug.

24, 2000) (internal quotations omitted).  The purpose of a complaint is to inform the defendant of

the general nature of the action and as to the incident out of which a cause of action arose.  *Id.* at

538.  Rule 12(e) is "designed to remedy unintelligible pleadings, not to correct for lack of

detail."  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y.1992), *aff'd*, 23 F.3d 398 (2d

Cir.1994).  "The 'preferred course' under the Federal Rules of Civil Procedure "'is to encourage

the use of discovery procedures to apprise the parties of the factual basis of the claims made in

the pleadings.'"  *Brown*, 2000 WL 34449703, at *9 (quoting *Boothe v. TRW Credit Data*, 523

F.Supp. 631, 635 (S.D.N.Y. 1981)) (denying motion for more definite statement).

## ARGUMENT

In an enforcement action, the Commission can establish venue and personal jurisdiction

under Section 6c(e) of the CEA, 7 U.S.C. § 13a-1(e), which statutorily provides for nationwide

service of process and broad venue selection.  Jurisdiction and venue can also be established

under the regular provisions of Rule 4 and the general venue provisions of 28 U.S.C. § 1391.[5]

*See Pure Oil Co. v. Suarez*, 384 U.S. 202, 205 (1966) (holding that general venue provisions also

---

[5]Defendant concedes as much: "7 U.S.C. §13a-1(e) is, by its express terms, permissive."  Def. Mem. at 9.

apply in cases brought pursuant to federal statutes that contain special venue or service of process provisions, "at least in the absence of contrary restrictive indications in any such statute"). Finally, Brooks's constitutional argument is without merit, because his contacts with New York in the course of his scheme were numerous and would satisfy any standard.

## I.
## THIS COURT HAS PERSONAL JURISDICTION OVER BROOKS

### A.   This Court Has Personal Jurisdiction Because Brooks Was Served Under the Commodity Exchange Act's Nationwide Service of Process Provision

To establish personal jurisdiction over a defendant in a federal court, the Commission, as plaintiff in an enforcement action, must (1) execute proper service of the summons, *Omni Capital Int'l, Ltd., v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) and (2) demonstrate that the requirements of due process have been met. *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir. 1974); *see CFTC v. Worldwide Commodity Corp.*, 366 F. Supp.2d 276, 280 (E.D. Penn. 2005) (holding jurisdiction and venue were proper in the Eastern District of Pennsylvania over a Florida company, served in Florida, that had a business relationship with customers in that district).

### 1.   Brooks Was Properly Served

Section 6c(e) of the CEA provides that "process in such cases may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found." 7 U.S.C. § 13a-1(e). The Supreme Court in *Omni Capital* noted that in an enforcement action by the Commission, CEA Section 6c(e) provides explicit authorization of nationwide service of process by authorizing service "wherever the defendant may be found." *Omni Capital*, 484 U.S. at 105; *Worldwide Commodity*, 366 F. Supp.2d at 280. Brooks was properly served in Texas. Kokal Decl., Ex. 6. Pursuant to Rule 4(k)(1)(C), because the CEA authorizes service wherever

Brooks was to be found, service upon him establishes personal jurisdiction.  Fed. R. Civ. P. 4(k)(1)(C).  *See generally* 4 Charles Alan Wright, et al., Fed. Prac. & Proc. § 1068.1.

### 2.      The Requirements of Due Process Have Been Met

Where, as in the CEA, Congress has provided for nationwide service of process, personal jurisdiction is limited by the 5th Amendment's due process provision.  *Mariash*, 496 F.2d at 1143; *Chew v.Dietrich,* 143 F.3d 24, 28 n. 4 (2d Cir. 1998).  Under the law of the Second Circuit, to satisfy the 5th Amendment (1) "the service authorized by statute must be reasonably calculated to inform the defendant of the pendency of the proceedings in order that he may take advantage of the opportunity to be heard in his defense" and (2) "defendants have the requisite 'minimal contacts' with the State which would exercise its jurisdiction over them."  *Mariash*, 496 F.2d at 1143.  Personal service of the summons and complaint on Brooks satisfied the requirement of notice and opportunity to be heard.  Because Brooks "reside[s] within the territorial boundaries of the United States, the 'minimal contacts' required to justify the federal government's exercise of power over them are present."  *Id.*

The Second Circuit has not addressed whether the 5th Amendment imposes additional fairness requirements on the exercise of jurisdiction over United States residents pursuant to a federal statute allowing nationwide service of process, but courts in the Southern District of New York have found exercise of jurisdiction in this district is reasonable in such cases.  In *SEC v. Softpoint Inc.*, an enforcement action in which the defendant was served under the federal securities laws,[6] which similarly authorize nationwide service of process, the court held that

------

[6] Section 22 of the 1933 Securities Act provides in relevant part: "Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district

(footnote continues on next page)

"[o]nce it becomes clear that the relevant test is to be applied with respect to the United States and not simply to New York, the constitutional propriety of the Court's assertion of jurisdiction over [the Defendant] becomes obvious."  2001 WL 43611, at *6, No. 95 Civ. 2951 (GEL) (S.D.N.Y Jan. 18, 2001).  There, the defendant was a Nevada resident whose violations of the securities laws arose from a scheme to raise capital for a Nevada-based corporation.  The court held that where a United States resident who was president of a United States company committed fraudulent activity in the United States and defrauded United States investors, "his activities more than suffice to support personal jurisdiction in any federal district court, including this one."  *Id.*  Here, Brooks's similar connections to the United States are indisputable.

The *Softpoint* court also found that the exercise of jurisdiction over a Nevada resident in the Southern District of New York was reasonable, noting that "the realities of modern transportation and communication as well as the nature of civil litigation . . . serve to reduce the burden of litigating in a distant forum."  *Id.*  In *Hallwood v. Gotham*, a case also involving the nationwide  service of process provision in the 1934 Securities Exchange Act, the court held that "the question is whether the burden on [the defendant] of litigating this case in New York is so severe that the exercise of personal jurisdiction over it is arbitrary, shocks the conscience, or offends fundamental principles of ordered liberty, notwithstanding the strong federal interest in

---

of which the defendant is an inhabitant or wherever the defendant may be found."  15 U.S.C. § 77v(a). Section 27 of the 1934 Securities Exchange Act provides in relevant part: "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."  15 U.S.C. § 78aa(a).

Section 6c(e) of the Commodities Exchange Act is almost identical and arguably broader: "[a]ny action under this section may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur, and process in such cases may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found." 7 U.S.C. § 13a-1(e).

efficient and effective enforcement of the securities laws."  104 F. Supp.2d 279, 286-287 (S.D.N.Y. 2000).  Here, Brooks has made no such showing.

Moreover, by trading, clearing and maintaining positions in futures and cleared swaps, Brooks operated under the CEA.  "When a defendant is operating under a statute that provides for nationwide service of process . . . the defendant can reasonably anticipate being sued in any district in the United States for purposes of the minimum contacts analysis."  *Worldwide Commodity*, 366 F. Supp.2d at 282.  In such cases, "there does not seem to be much room to find that one district in the United States is more likely than another to violate the 'traditional notions of fair play and substantial justice.'"  *Id.*  As an experienced commodities trader, Brooks should have reasonably anticipated being haled into New York court for violations of the CEA, particularly as those violations related to his trading of NYMEX Ethanol Futures that were governed by NYMEX.

## B.    Defendant's Argument Based on New York Long Arm Statutes Is Wrong

Brooks wrongly argues that the New York Long Arm statute limits this Court's jurisdiction over him.  As noted above, the relevant statute is CEA Section 6c(e) which provides explicit authorization of nationwide service of process by authorizing service "wherever the defendant may be found."  *Omni Capital*, 484 U.S. at 105; *Worldwide Commodity,* 366 F.Supp.2d at 280.  However, in light of Defendant's argument[7] and in the interest of responding

---

[7] Brooks also incorrectly argues that the Commission should be collaterally estopped from asserting any basis for personal jurisdiction other than New York's long-arm statute as applied in *CFTC v. Amaranth Advisors, L.L.C.*, 554 F. Supp.2d 523, 529 (S.D.N.Y. 2008).  *See* Def. Mem. at 12, n.10 (citing *Parklane Hosiery Co. v Shore*, 439 U.S. 322 (1979)).  Defendant states that "[t]here is no obvious legal reason…why the CFTC should not be collaterally estopped from arguing for a different rule in this case."  Def. Mem at 12 n. 10.  The obvious reason why the Commission is not collaterally estopped is because, as the Supreme Court held, "*Parklane Hosiery*'s approval of nonmutual offensive collateral estoppel is not to be extended to the United States" and "nonmutual offensive

(footnote continues on next page)

fully to his motion, Plaintiff will address his argument.  The complaint here would equally

satisfy the relevant long arm statute.  New York's long-arm statute provides in part:

> (a)…As to any cause of action arising from any of the acts
> enumerated in this section, a court may exercise personal
> jurisdiction over any non-domiciliary or his executor or
> administrator, who in person or through an agent:
>
>> (1) Transacts any business within the state or contracts
>> anywhere to supply goods or services in the state; or
>>
>> (2) Commits a tortious act within the state . . .; or
>>
>> (3) Commits a tortious act without the state causing injury
>> to a person or property within the state . . . if he (i)
>> regularly does or solicits business, or engages in any other
>> persistent course of conduct, or derives substantial revenue
>> from goods used or consumed or services rendered, in the
>> state, or (ii) expects or should reasonably expect the act to
>> have consequences in the state and derives substantial
>> revenue from interstate or international commerce.

N.Y.Civ.Prac.L. & R. ("CPLR") § 302(a).  Defendant Brooks is subject to jurisdiction under all

of these bases.

As this Court has noted, "CPLR 302(a)(1) is a 'single-act' statute, meaning that proof that

one transaction occurred in New York is sufficient to invoke jurisdiction," where "the

defendant's activities were purposeful, and …there was a substantial relationship between the

---

collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues" against those who were not parties to a prior decision. *U.S. v. Mendoza*, 464 U.S. 154, 158, 162 (1984).

Moreover, Defendant's argument misunderstands both the doctrine of collateral estoppel and the actual holding in *Amaranth Advisors*, where the CFTC *prevailed* in pleading personal jurisdiction over a Canadian trader who directed his subordinates to trade futures on the NYMEX exchange.  Of course, as a general rule, "determinations adverse to the winning party do not have preclusive effect." *U.S. v. Cheung*, 555 F.2d 1069, 1076 (2d Cir. 1977). Further, the specific issue of which legal rule applies (either the CEA statutory provision or the long-arm statute) is a "pure question of law" normally not subject to collateral estoppel.  *U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) ("where pure questions of law—unmixed with any particular set of facts—are presented to a court, the interests of finality and judicial economy may be outweighed by other substantive policies.") (internal quotations omitted).  Thus, the choice between the two was not "necessary to support a valid and final" decision, *Ali v. Mukasey,* 529 F.3d 478, 489 (2d Cir.2008) (internal quotations omitted), because the Canadian trader in *Amaranth Advisors* would be subject to personal jurisdiction in this district for the NYMEX trades under either approach.

transaction and the claim asserted." *Exovir, Inc. v. Mandel*, No. 94 Civ 3546 (KMW), 1995 WL 413256 at *2 (S.D.N.Y. July 12, 1995) (citing *Kreutter v. McFadden Oil Corp.*, 522. N.E.2d 40, 43 (N.Y. 1988)).  Transacting business in the state does not require that the defendant actually enter New York, but may include cases where the defendant uses telephone or mail to "project himself" into the state. *Id.*  As discussed above, Brooks used telephone, electronic communication, and the mails to transact business in New York.  Specifically,

- He joined Citi's Institutional Clients Group business by entering into an employment relationship with New York-based Citicorp after executing and returning the employment agreements to Citi's offices in New York. In doing so he entered into an agreement governed by New York law.

- By virtue of his employment with New York-based Citicorp, he then regularly conducted business for Citi Energy, which is based in New York, by placing trades in NYMEX Ethanol Futures, or directing others he supervised to trade, through various brokers by telephone and electronic communications, in New York.

- The trades were conducted between Citi Energy and counterparties, some of which were also based in New York.

- The NYMEX Ethanol Futures that Brooks mismarked were governed by and cleared through ClearPort, and carried on the books of CGMI, a New York-based FCM.

Similarly, under CPLR §302(a)(2), a "substantial nexus" exists here between Brooks's NYMEX Ethanol Futures trades and the CFTC's claim. *See Amaranth Advisors*, 554 F. Supp. 2d at 530.  Brooks's execution of NYMEX Ethanol Futures trades were integral to the tortious acts involved in his scheme, as entering into the NYMEX Ethanol Futures trades allowed him to establish positions that could be mismarked in order to hide other losses.  Compl. ¶¶ 14-15; Kokal Decl. ¶ 27.

Moreover, applying CPLR §302(a)(3), to the extent Brooks committed violative acts outside of the state of New York (such as the entering of false marks into Citi Energy's books

12

and records from his office outside of New York), as Defendant contends (Def. Mem. at 5), his fraud caused injury to Citi Energy and its parent Citigroup in New York.  Compl. ¶¶ 3, 25. Brooks's violative acts occurred while he was employed by Citicorp (also in New York) and trading for Citi Energy with the knowledge that it was part of Citigroup (Brooks Aff. ¶8), and thus he violated the CEA at a time when he "reasonably expect[ed] the act to have consequences in the state and derive[d] substantial revenue from interstate or international commerce."  CPLR § 302(a)(3)(ii).

The same acts that show that Brooks transacted business in New York and demonstrate that his violations have a substantial nexus to, and caused harm in, New York satisfy the "minimum contacts" and "reasonableness" required by the Due Process Clause.  "[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."  *D.H. Blair & Co., Inc. v. Gottdiener* 462 F.3d 95, 105 (2d Cir. 2006).

## II.
## THIS COURT IS A PROPER VENUE

### A.  Venue is Proper Pursuant to the Commodity Exchange Act's Special Venue Provisions

Section 6c(e) of the CEA provides that "[a]ny action under this section may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur."  7 U.S.C. § 13a-1(e).  Given the nature of statutory commodities fraud actions, much like securities fraud actions by other regulators, "the special venue provisions should be liberally construed."  *SEC v. 800america.com, Inc.*, 2006 WL 3422670, at *5, 02 Civ. 9046 (HB) (S.D.N.Y. Nov. 28, 2006).

Here, Brooks both transacted business in this district and also a substantial part of the acts or practices that constituted the scheme or device occurred in New York.

Under the relevant part of Section 6c(e), venue depends on whether the defendant transacted business in the district at the time of the violation and some acts or practices in violation of the CEA occurred in the district. *See Worldwide Commodity*, 366 F.Supp.2d at 283.[8] At all relevant times, Brooks transacted business in New York. *First*, he transacted business in New York by entering to the employment contract with New York-based Citicorp and returning the employment agreements to Citi's offices in New York. *Second*, Brooks transacted business in New York through the trading of the NYMEX Ethanol Futures at issue. The NYMEX Ethanol Futures trades were on behalf of New York-based Citi Energy, , and many of these trades were with counterparties in this district (*see* Kokal Decl. ¶ 18 and Ex. 8). Brooks thus knew (or reasonably should have known) that his scheme required verbal or electronic communications into this district. *U.S. v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008) (holding in

---

[8] Defendant claims that venue is improper because he does not *currently* transact business in this district. A review of caselaw reveals that no court has adopted Defendant's proposed present-tense interpretation of Section 6c(e) of the Act; rather courts have found venue appropriate where a defendant transacted business at the time of the alleged violations. *See Worldwide Commodity*, 366 F. Supp.2d at 283.

The only special venue statute under which the temporal nature of the phrase  "transacts business" has been contested appears to be Section 12 of the Clayton Act, 15 U.S.C. § 22, which is the special venue and nationwide service provision in the antitrust laws. There is no Second Circuit opinion interpreting that phrase specifically. The majority of the Courts of Appeal have held that "transacts business" is determined at the time the events occurred. *See Lee v. Ply*Gem Industries, Inc.*, 593 F.2d 1266, 1273 (D.C. Cir. 1979) ("at least in situations where the business activities relied on to establish Section 12 venue are bound up in the course of conduct alleged to transgress the antitrust laws, the temporal frame of reference of that section is the point at which the cause of action arises, not the date suit is commenced"); *Eastland Const. Co. v. Keasby & Mattison Co.*, 358 F.2d 777, 780 (9th Cir. 1966) (same); *Bd. of Cnty. Comm'rs of Custer Cnty. v. Wilshire Oil Co. of Texas*, 523 F.2d 125, 132 (10th Cir. 1975) (same); *see also Snyder v. Eastern Auto Distributors, Inc.*, 357 F.2d 552 (4th Cir. 1966) (interpreting similar venue provision of Automobile Dealers Franchise Act as supplemented by general venue provisions to examine the time of injury and not the time of filing). Only one circuit looks to the time of suit. *See Sunbury Wire Rope Mfg. Co. v. U.S. Steel Corp.*, 230 F.2d 511, 512 (3d Cir. 1956) (holding that Clayton Act venue is determined at time of filing). The most recent decision in the Southern District of New York to have considered the issue (over fifty years ago and without the benefit of the later circuit opinions contrary to the Third Circuit's conclusion in *Sunbury*) similarly held that the time is measured as of the date of filing. *Gem Corrugated Box Corp. v. Mead Corp.*, 189 F. Supp. 584, 586 (S.D.N.Y. 1960) (citing *Sunbury*).

securities fraud criminal case that venue was proper and noting that receipt "of electronic transmissions in a district is sufficient to establish venue activity there.")  Moreover, Brooks traded in New York by entering into the NYMEX Ethanol Futures contracts that were governed by NYMEX Rules and void unless cleared on Clearport, thus causing the trades to be completed only through NYMEX in New York.  *Cf. U.S. v Svoboda*, 347 F.3d 471, 483 (2d Cir. 2004) (holding that venue was proper in New York because defendant "either knew, or could reasonably foresee, that his trades would be executed in the Southern District of New York.  At a minimum, as soon as [defendant] received the first trade confirmation, it became foreseeable that his trades could be executed in the Southern District.")

Further, the acts and practices in violation of the CEA occurred in this district:

- Brooks was allowed to place the trades for Citi Energy only by virtue of his employment by Citicorp.  Both companies are based in this district.  In order to be so employed, Brooks had to execute an employment agreement governed by New York law and return that document to Citi personnel in New York City.

- Brooks traded the NYMEX Ethanol Futures, which were governed by the rules of NYMEX, a designated contract market with a principal place of business in New York, and cleared on ClearPort.  He entered into the trades with counterparties, including counterparties in New York, and promptly received trade confirmations from his broker that the trades were NYMEX Ethanol Futures and cleared on ClearPort.  The trade confirmations made clear that if the contract could not be so cleared on ClearPort for whatever reason, then the contract was null and void.  The trade confirmations also indicated to Brooks that the trades were being placed for Citi Energy (also New York-based) at a Citi Energy address in New York City.

- As noted above, in order to execute these trades, Brooks knew or reasonably had to know that they were NYMEX contracts that would be consummated in New York by being cleared on ClearPort.  *Cf. CFTC v. Savage*, 611 F.2d 270, 278 (9th Cir. 1979) (holding placing telephone calls to California provided venue as the calls were part of the acts or practices alleged).

- The NYMEX Ethanol Futures were carried on the books of CGMI here in New York City all the time that Brooks was mismarking them.

- Brooks's mismarkings of NYMEX Ethanol Futures ultimately flowed into books and records that were reviewed by Citi finance personnel in New York City, and Brooks caused losses to Citi Energy and Citi in this district. Welsh Decl. ¶¶ 4-5. *See U.S. v. Kim*, 246 F.3d 186, 192 (2d Cir. 2001) (venue proper in this district where the defendant merely caused the false invoices to be sent knowing that they would be paid from New York bank accounts).

In interpreting the comparable venue provision (*see supra*, at 9 n. 5) under the Securities Exchange Act, the court held that "It is clear in this circuit that 'any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue.'" *Steinberg & Lyman v Takacs*, 690 F. Supp. 263, 267 (S.D.N.Y 1988) (quoting *First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon*, 634 F. Supp. 1341, 1350 (S.D.N.Y. 1985)). In *Steinberg & Lyman*, the out-of-state defendants were accused of placing orders in New York for stock and then failing to follow through on the stock purchase, which was more than sufficient to establish venue in this district "under the broad provisions of" the securities laws. *Id.* at 267-68. In Brooks's case, he continuously over the course of almost a year entered into NYMEX Ethanol Futures trades on behalf of Citi Energy while employed by Citicorp. The facts unequivocally establish that these non-trivial acts and practices occurred in the Southern District of New York as part of Brooks's fraudulent scheme.

**B.** **Proper Venue Would Lie In This District Under the General Federal Venue Statute**

In relevant part, 28 U.S.C. § 1391(b) provides that a "civil action may be brought in … (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the

claim can occur in more than one district.  Thus, Section 1391(b)(2) may be the basis for venue in multiple districts.  14D Charles Alan Wright, et al., Fed. Prac. & Proc. § 3806.

This Court has noted that Section 1391 "permits the selection of a district in which a substantial portion of the relevant events took place, even if a greater portion of those events occurred elsewhere."  *Kelly v. MD Buyline, Inc.*, 2 F. Supp.2d 420, 439 (S.D.N.Y. 1998) (finding venue proper in New York where Texas-based defendant caused harm in New York and events occurred in New York and Texas); *see also Geller Media Management, Inc. v. Beaudreault*, 910 F. Supp. 135, 139 (S.D.N.Y. 1996) (venue was proper in New York where conduct at issue "occurred in two main locations—Houston and New York").

Although Brooks presumably was located in Houston when he mismarked the NYMEX Ethanol Futures, the Southern District of Texas does not have exclusive venue under § 1391(b). Rather, venue is also proper in New York, where, as outlined above, Brooks engaged in trading NYMEX Ethanol Futures that were an integral part of his fraudulent scheme, where finance teams reviewed the ledger that incorporated his marks, where his fraudulent marks became part of Citi's financial statements, and where the ultimate injury of his fraud was felt.

## III.
## DEFENDANT HAS FAILED TO SHOW THAT THE INTERESTS OF JUSTICE REQUIRE TRANSFER OF VENUE.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  A Defendant who moves "for a change of venue must make a 'strong case for a transfer.'"  *Big Apple*, 2007 WL 747807, at *8 (quoting *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950)), and "must prove by a preponderance of the evidence that a change of venue is warranted."  *Id.* (internal quotation

omitted).  As this Court articulated in *Big Apple*, courts consider "a number of criteria, none of them individually dispositive.  They include:"

> (1) the convenience of the parties; (2) convenience of the witness[es]; (3) relative means of the parties; (4) locus of operative facts and the relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

*Id.* (internal quotations omitted).

Here, Defendant has failed to establish that these criteria weigh in his favor to warrant transfer to Houston, Texas.  Significantly, Brooks's declaration is silent on any of the factors to be considered on a transfer venue motion, other than the fact that he lives in Houston Texas. Brooks's counsel's argument (with no evidentiary support apart from Brooks's own residence) for transfer can be stated in a single sentence:  "Brooks and his supervisors are all in Houston" (Def. Mem. of Law at 17) and if this action is not transferred then "all the witnesses will [have to] travel from Texas for the proceedings" (*Id.* at 18).  As set forth below, that is insufficient evidence to satisfy the Defendant's burden on his transfer motion.

**Convenience of the Parties**.  "In assessing the parties' convenience, a showing of inconvenience to the defendant is not enough to justify §1404(a) relief, where transfer would merely place the inconvenience on the plaintiff."  *Big Apple* at *8 (internal quotations omitted). Here, as in *Big Apple*, Defendant has given no valid reason why the inconvenience of him litigating in New York is any greater than the inconvenience to Plaintiff litigating in Texas.

**Convenience of Witnesses.**  The convenience of non-party witnesses is one of the most significant factors to be weighed in a motion to transfer venue.  *Russell v. Hilton International of*

*Puerto Rico, Inc.*, No. 93 Civ. 2552 (KMW), 1994 WL 38516, at *5 (S.D.N.Y. Feb. 4, 1994).

"When a party seeks transfer on account of the convenience of witnesses to be called under

§1404(a), he must clearly specify the key witnesses to be called and must make a general

statement of what their testimony will cover." *Big Apple*, at *8.  Here, merely announcing that all

of Brooks's supervisor are in Texas, (Def. Mem. at 17), without even providing the names of

those former supervisors or indicating that he will call those supervisors as witnesses, is wholly

insufficient for that factor to weigh in Defendant's factor.  In order to weigh in Defendant's

favor, as this Court has acknowledged, "'[h]e must clearly specify the key witnesses to be called

and must make a general statement of what their testimony will cover.'"  *Big Apple* at *8.

     In stark contrast, Plaintiff has identified its witnesses' names and provided a summary of

their testimony.  Kokal Decl. ¶ 33.  Moreover, Plaintiff has submitted declarations from two Citi

employees, both of which were employed by Citi in New York during the Relevant Period, one

still works in New York, and the other works in Costa Rica.  In addition, Plaintiff may call, if

necessary, a Rule 30(b)(6) witness from NYMEX to testify to the settlement prices of the

NYMEX Ethanol Futures products at issue, which are cleared on NYMEX and that witness is

likely to be located in New York given that NYMEX is located in New York.  *Id.* ¶ 33.  As to the

potential witnesses that reside in Houston, Texas, this Court has previously weighed the potential

inconvenience of witnesses travelling from Texas to New York, finding that "a four-hour plane

ride for a few witnesses is not sufficiently inconvenient to weigh heavily in favor of transferring

the case."  *Kelly,* 2 F. Supp.2d at 441 n. 9.

     ***Relative means of the parties.***  Defendant has asserted (but not under oath) that he is

currently unemployed (Def. Mem. at 18); however, Defendant earned a substantial salary during

his employment (Gotthard Decl. Ex. 1, at 2) and has the financial resources to retain counsel

from both Chicago and St. Louis as evidenced by his counsel in this matter, which must be greater than travel costs. Moreover, Defendant's travel to New York may not be necessary, given video conferencing capabilities, which were already utilized when Plaintiff took Defendant's investigative testimony. Defendant was represented during the investigation by a lawyer from Texas in addition to his Chicago lawyer; Defendant has added counsel from St. Louis to his current defense team. Kokal Decl. ¶ 32. Accordingly, this factor should not weigh heavily, if at all, in Defendant's favor.

  ***Operative Facts and Sources of Proof.*** Defendant did not address the location of the documents in its motion to transfer venue, likely because all of the documents produced to Plaintiff by Citi's New York counsel as well as the investigative testimony previously taken by Plaintiff in this matter are located in New York. Kokal Decl. ¶ 34-35.

  ***Attendance of the witnesses.*** Defendant argues that because witnesses "presumably reside in Houston" that "this Court would have no subpoena power over any Citi Energy employees Brooks (or the CFTC) may need to call as witnesses at the trial in this case." Def. Mem. at 18. However, Defendant, like the defendants in *Kelly*, has not made a showing that "any significant witnesses would not be available for testimony—either live or by deposition—if the case remained here." *Kelly*, 2 F. Supp.2d at 442. As this Court noted, "to the extent that any … witnesses offer testimony that may be controverted—in which case their credibility, and hence their demeanor, may be significant—defendants may use videotaped depositions to preserve a visual and oral record. *Id.* This factor does not weigh in favor of transfer.

  ***Plaintiff's choice of forum.*** This factor should be afforded substantial consideration, particularly given that a substantial part of the activities complained of occurred in New York. "It is well-settled that a plaintiff's choice of forum should not be disturbed absent a strong

showing that the balance of convenience favors the alternative forum." *Hugeclick.com v. Vanderpol*, 2001 WL 170803, No 00 Civ. 1976 (KMW) (S.D.N.Y Feb. 21, 2001).  This factor weighs in favor of venue in New York.

   ***Calendar Congestion.***  Defendant has not argued that this Court's docket is more congested than that of the Southern District of Texas.  This factor does not weigh in favor of transfer to Texas.

   ***Familiarity with substantive law.***  This action is governed by federal law and accordingly, this factor is neutral to a transfer venue determination.

   ***Practical difficulties.***  Defendant has not identified any practical difficulties with conducting a trial in New York, other than the convenience of parties and witnesses discussed above.  This factor does not weigh in favor of transfer to Texas.

   ***Interest of justice.***  Defendant has not suggested a trial in New York would be unjust for any reason.  This factor does not weigh in favor of transfer to New York.

   Accordingly, under the standard set forth in *Ford Motor*, 182 F.2d at 330, Defendant's motion to transfer should be denied because Defendant has not shown by a preponderance of the evidence that a "strong case" exists for transferring this action to Texas.

## IV.
### THE COMPLAINT SATISFIES RULE 9(b) AND DOES NOT REQUIRE A MORE DEFINITE STATEMENT

   Rule 9(b) requires "the circumstance constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  As Defendant states, the rule requires that the complaint essentially state the who, what, when, where and how of an alleged fraud.  Def. Mem. at 10 (citing *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  Thus, a complaint "based on misstatements must (1) specify the statements that plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." *Id.; see Schuler v. NIVS Intellimediea Technology

Grp.*, 11 Civ. 2484 (KMW), 2013 WL 944777, at *5 (S.D.N.Y. Mar. 12, 2013) (same)). "The

primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the

factual ground upon which it is based. . . . [It] also safeguards defendant's reputation and

goodwill from improvident charges of wrongdoing and it serves to inhibit the institution of strike

suits." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).

The complaint amply satisfies Rule 9(b):

1) ***The complaint specifies the statements that Plaintiff contends are fraudulent.*** The statements were the false markings of the NYMEX Ethanol Futures positions that Brooks acquired. Compl. ¶2, 14-15, 18.

2) ***The complaint identifies the speaker.*** The speaker was Brooks. Compl. ¶¶ 2-4, 15-19, 21.

3) ***The complaint states when and where the statements were made.*** The statements were made by Brooks (presumably while at work at Citi Energy's offices) on an almost daily basis from November 2010 to October 2011. Compl. ¶¶ 1, 18, 35. Moreover, the Complaint identifies a large number of the mismarked trades. Compl., Ex. 1.[9] .

4) ***The complaint explains why the statements were fraudulent.*** The statements were fraudulent because Brooks entered values for the NYMEX Ethanol Futures positions that he had acquired that falsely represented the fair market value of those NYMEX Ethanol Futures positions. These false

---

[9] To the extent that Exhibit 1 actually understates the number of mismarked NYMEX Ethanol Futures positions given the almost daily mismarkings, *see* Compl. ¶1 (noting that Brooks mismarked his book on a "majority of the days for nearly eleven months"), the Complaint still provides the Defendant with fair notice of the claims without necessarily "attribut[ing] each individual act to the individual defendant who committed it." *CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168, 190 (D.N.J. 1988) (denying motion to dismiss under Rule 9(b)). *See CFTC v. Giddens*, 1:11-CV-2038-WSD, 2012 WL 603592 (N.D. Ga. Feb. 24, 2012) (holding that Rule 9(b) "permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud" in cases of "prolonged multi-act schemes.")

representations hid financial losses associated with Brooks's trading from both Citi Energy and Citi itself.[10]  Compl. ¶3, 17, 18, 28,

Brooks does not challenge the Complaint on failing to meet any of these Rule 9(b) tests for particularity.  Further, Brooks does not claim that failing to identify the specific victim in the complaint itself prevents him from having "fair notice" of the gravamen of the claims or otherwise unfairly tarnishes his reputation.  Rather, he claims that the Complaint does not identify with particularity the specific victim within Citi's corporate structure.  *See* Def. Mem at 10.  But where a detailed complaint such as this one is otherwise precise and detailed in identifying the fraud, Rule 9(b) is satisfied even without the specific victims (i.e., Citi and its affiliates) are not identified by name.  *See CFTC v. Reisinger*, 11 C 8567, 2012 WL 2075825, at *3 (N.D. Ill. June 8, 2012) (holding that Rule 9(b) does not require naming each recipient of the statements or even the exact date when documents were transmitted; such a holding would "privilege the form of the pleadings over their substance").

Brooks also moves for a more definite statement with regard to the relationship of the various Citi affiliates.  Def. Mem. at 15.  Such motions are disfavored and should not be granted "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."  *Brown*, 2000 WL 99Civ. 2435 (KMW), 2000 WL 34449703, at *9 (S.D.N.Y. Aug. 24, 2000).  Brooks does not cite any authority for the proposition that general descriptions of Citi and its affiliates (as in the Complaint) rather than their specific names renders the complaint unintelligible, especially given that he signed the employment contracts with Citicorp and that he traded the NYMEX Ethanol

---

[10] Contrary to Defendant's suppositions that the complaint also fails to satisfy Rule 8, these allegations provide "enough facts to state a claim to relief that is plausible on its face."  *SEC v. Apuzzo*, 689 F.3d 204, 207 (2d Cir. 2012) (reversing dismissal of claim alleging aiding and abetting of accounting fraud).

Futures for Citi Energy–a company based in New York,  which financials rolled up into the parent Citi, also here in New York.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Defendant's motion be denied.  Should the Court be inclined to conclude that venue in this district is improper, the court should exercise its discretion to transfer pursuant to 28 U.S.C.§ 1406(a) "in the interests of justice."[11]

Dated:   New York, New York
         December 9, 2013

                              Respectfully submitted,

                              COMMODITY FUTURES TRADING
                              COMMISSION
                              Manal Sultan
                                Deputy Director
                              David Acevedo
                                Chief Trial Attorney


                               /s/*Janine Gargiulo*_____
                              Janine Gargiulo
                                Trial Attorney
                              Michael Geiser
                                Trial Attorney
                              David Oakland
                                Trial Attorney

                              Division of Enforcement
                              140 Broadway, 19th Floor
                              New York, NY 10005
                              (646) 746-9730

                              Attorneys for Plaintiff

---

[11] "[T]ransfer is preferable to dismissal" where it "avoids the potential wastefulness of requiring plaintiffs to refile the action, and the defendants will suffer no prejudice from the transfer."  *Jordache Enterprises, Inc. v. Brobeck, Pfleger, & Harrison*, 1994 WL 7460, *5, No. 92 Civ. 9002 (KMW) (S.D.N.Y. March 7, 1994).